WO                                                                                              MGD

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Umar Sharrfi Ibrahim, | No. CV 18-04942-PHX-MTL (JFM) |
| Plaintiff, | |
| v. | **ORDER** |
| Facility Health Administration, et al., | |
| Defendants. | |

Plaintiff Umar Sharrfi Ibrahim, who is currently confined in Arizona State Prison Complex-Eyman, brought this civil rights action pursuant to 42 U.S.C. § 1983. Defendant Carrie Demery moves for summary judgment, and Plaintiff opposes.[1] (Docs. 78, 81.)

**I.     Background**

On screening of Plaintiff's First Amended Complaint (Doc. 8) under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated an Eighth Amendment claim against Facility Health Administrator (FHA) Demery and required Demery to answer. (Doc. 10.)

**II.    Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response. (Doc. 80.)

those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**III. Facts**[2]

On May 4, 2018, Plaintiff submitted a Health Needs Request (HNR) seeking medical treatment for an injury to his right hand. (Doc. 8 at 3.) The next day, Plaintiff saw

---

[2] The facts are drawn from the parties' Statements of Facts and exhibits and Plaintiff's verified First Amended Complaint, to the extent his allegations are based on his personal knowledge and sets forth specific facts admissible in evidence. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (where the plaintiff is pro se, the court must consider as evidence in his opposition to summary judgment all of his contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where he attested under penalty of perjury that the contents of the motions or pleadings are true and correct); *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995).

a nurse, who gave him antibiotics for a potential infection in his hand, a tetanus shot, an ace wrap, ordered x-rays, and placed Plaintiff on the treatment line. (*Id.*)  Two weeks passed without Plaintiff seeing a provider and Plaintiff submitted an HNR on May 17, 2018, explaining that his hand had been x-rayed and he was told it was broken, that his hand hurt "really bad," and he had not seen a provider yet. (*Id.*; Doc. 82 at 8.)  When a nurse saw Plaintiff's injury the next day, she immediately sent him to see Dr. Rodney Stewart. (Doc. 8 at 3.)  Dr. Stewart looked at Plaintiff's hand and x-rays and was shocked that Plaintiff had been injured for almost three weeks without being sent for surgery. (*Id.*)  Dr. Stewart told Plaintiff he needed surgery immediately and sent Plaintiff the very next Monday to see a hand specialist at the Arizona Center for Hand Surgery in Mesa, Arizona. (*Id.*)  On May 21, 2018, Plaintiff saw the specialist at the Arizona Center for Hand Surgery, and the specialist told Plaintiff he needed surgery and should return in two weeks for the surgery. (*Id.* at 4-5.)

Plaintiff submitted several more HNRs inquiring about the status of the surgery because of the constant pain and limited use of his hand for daily activities, such as using the restroom, writing letters, eating, exercising, and working as the pod porter. (*Id.* at 4; Doc. 82 at 9-10.)  On July 7, 2018, Plaintiff submitted an Inmate Informal Complaint Resolution to the Corizon Director, explaining that his hand had been broken for months and the doctor said he needed surgery. (Doc. 8 at 4.)  Plaintiff did not receive a response until September 5, 2018. (*Id.*)

On July 28, 2018, Plaintiff submitted an Inmate Grievance, in which he wrote:

> Back in early May of 2018 (specifically 5.4.18) I put in an HNR about my broken hand.  They took me to medical but made me wait 2 weeks before seeing a provider.  When I finally seen the provider they scheduled me for "outside" treatment on the streets.  I went that following week for x-rays and the doctor said it would be 2 weeks time before I come back for surg[e]ry but here it is 2 ½ months later and I'm still not in surge[e]ry.  My hand is broken, my abilities are limited in many areas.  I put in multip[le] HNRs to follow up on the status only to be told my appointment is scheduled.  I need medical

> attention. Make D.O.C. take me to get my surg[e]ry done before I file a lawsuit on them.

(Doc. 82 at 27.)

On August 20, 2018, Defendant responded to Plaintiff's grievance as follows:

> This is in response to your Inmate Grievance dated July 28, 2018 and received at Eyman Medical on August 6, 2018, in which you are requesting to have surgery on your hand. You state that you injured your hand on May 4, 2018 and were seen by an off-site provider and you were told that you would be scheduled for surgery in two weeks, however that has not occurred.
>
> Investigation into the issue that you have raised included a review of your medical record which evidences that you were treated at Arizona Center for Hand Surgery on May 21, 2018 for a right hand injury resulting in an impacted 2nd metacarpal head fracture. You were placed in a short arm splint and it was recommended that you be sent for follow up with a CT scan in one week. On July 2, 2018 a consultation request was submitted for a CT scan to be completed, and this consultation request is currently being processed within required time frames.
>
> If you have any further concerns or issues that have not been addressed, please submit a HNR directly to your unit nursing staff for scheduling.
>
> In accordance with current policy, this response is final, and constitutes exhaustion of all remedies within the Department.

(*Id.* at 28.)

After receiving this response, Plaintiff submitted nine more HNRs "to push the issue about [his] surgery." (Doc. 8 at 5.) For example, Plaintiff wrote in an HNR dated August 30, 2018 that he attended an outside consult for a CT scan and was wondering when he would have surgery. (Doc. 82 at 11.) The response states the "clinical coordinator initiated offsite. Cannot say when." (*Id.*) In an HNR dated September 16, 2018, Plaintiff again asked when he would have surgery and said that he was in constant pain. (Doc. 82 at 12.) The response to that HNR said the consult had not been approved yet. (*Id.*)

On December 3, 2018, seven months after the injury, Plaintiff had surgery "but the damage was done" and Plaintiff "suffered permanent loss of partial mobility to [his] dominant hand." (Doc. 8 at 5.) The surgeon told Plaintiff that "because [his] hand healed wrong recovery would be minimal, if any." (*Id*.)

In her administrative position, Defendant did not provide medical care, did not recommend or order any treatment for an inmate, and did not have the authority to recommend or approve outside consultations for inmates. (Doc. 79 ¶ 2.) The Utilization Management Committee is responsible for the review and approval of consultation requests for outside treatment. (*Id*.) In response to Plaintiff's interrogatories, Defendant stated that she has worked as a health care professional for 32 years. (Doc. 82 at 30.) In response to Plaintiff's interrogatory about her duties as FHA, Defendant responded she "had zero involvement regarding inmates needing an outside consultant for treatment." (*Id*.) In response to Plaintiff's interrogatory asking whether Defendant had reviewed the x-ray results that were processed on May 8, 2018, Defendant responded that she "did not review Plaintiff's x-ray results being that Defendant did not have access to Plaintiff's medical records and did not interpret medical records when responding to inmates' grievance complaints." (*Id*. at 33.)

**IV.    Eighth Amendment**

To support a medical care claim under the Eighth Amendment, a prisoner must demonstrate "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two prongs to the deliberate-indifference analysis: an objective standard and a subjective standard. First, a prisoner must show a "serious medical need." *Id.* (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted). Examples of indications that a prisoner has a serious medical need include "[t]he

existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1059–60.

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere with medical treatment.'" *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). Deliberate indifference may also be shown where prison officials fail to respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096. "In deciding whether there has been deliberate indifference to an inmate's serious medical needs, [courts] need not defer to the judgment of prison doctors or administrators.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Hunt v. Dental Dep' t*, 865 F.2d 198, 200 (9th Cir. 1989).

Even if deliberate indifference is shown, to support an Eighth Amendment claim, the prisoner must demonstrate harm caused by the indifference. *Jett*, 439 F.3d at 1096; *see Hunt*, 865 F.2d at 200 (delay in providing medical treatment does not constitute Eighth Amendment violation unless delay was harmful).

**V.   Discussion**

**A.   Serious Medical Need**

Defendant does not address whether Plaintiff's broken hand rose to the level of a serious medical need. The record evidence reflects that Plaintiff had x-rays and a CT scan taken of his broken hand, suffered pain in his broken hand for months, had hand surgery seven months after it was injured, and suffers permanent loss of mobility in that hand. Thus, Plaintiff's broken hand was worthy of comment or treatment and the injury was painful and affected Plaintiff daily activities, which is sufficient to support that Plaintiff had a serious medical need.

. . . .

## B.     Deliberate Indifference

Defendant argues that Plaintiff has failed to provide any evidence that her response to his medical grievance was medically unacceptable under the circumstances or that she acted in conscious disregard of an excessive risk to his health. (Doc. 78 at 5.) Defendant asserts that she did not have the authority to approve the outside consultation for surgery and that only medical providers can request specialty consults. (*Id*.) Defendant further contends that her only involvement in Plaintiff's medical care was in responding to his grievance, which is "a purely administrative position," and that she was allowed to rely on the judgments of qualified medical professionals. (*Id*. at 5-6, citing *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014).) Lastly, Defendant argues that Plaintiff cannot show he suffered any actual injury as a result of her actions in her administrative role responding to his grievance, that she was not a medical provider, and was merely passing on information in Plaintiff's medical file in responding to his grievance. (*Id*. at 6.)

Defendant does not provide any of Plaintiff's medical records related to his hand injury or even those that are referenced in her response to Plaintiff's grievance.[3] While Defendant states in her interrogatory response that she did not have access to Plaintiff's medical records, she does not provide any evidence explaining who does have that access, who investigated Plaintiff's grievance, if not Defendant, or who prepared the summary of Plaintiff's medical care. Moreover, in her Reply, Defendant asserts that "in responding to Plaintiff's grievance Defendant was simply reviewing his medical records and responding — a purely administrative position and that was the extent of her involvement with Plaintiff's medical care." (Doc. 85 at 5.) Thus, it appears Defendant did have access to, and reviewed, Plaintiff's medical records. Nor does it seem plausible that as the person responsible for responding to prisoners' medical grievances she did not have access to prisoners' medical records, particularly when her response is the final step in the grievance process. Although Defendant argues she was allowed to rely on the judgments of qualified

---

[3] Plaintiff states that Defendants never disclosed his medical records to him and that he could not pay the $90 fee in order to receive them. (Doc. 81 at 7.)

- 7 -

medical professionals, Defendant does not say that she actually relied on the judgment of qualified medical professionals in responding to Plaintiff's grievance or who those qualified medical professionals might be. And, while Defendant may not have the authority to approve an outside consultation for surgery, she does not provide any information about what she is supposed to do when she receives a grievance, such as Plaintiff's, indicating that a prisoner has an urgent medical need and is not receiving timely care.

Because Defendant did not present any of the relevant medical records, and believing Plaintiff's evidence and drawing all inferences in Plaintiff's favor, Dr. Stewart told Plaintiff three weeks after the injury that he needed immediate surgery, and the hand specialist told Plaintiff on May 21, 2018 that he should return in two weeks for the surgery. Records of those visits with doctors, the x-ray results, and the multiple HNRs Plaintiff submitted asking about the surgery and complaining about the pain in his hand are all presumably in the records that Defendant, or someone else, reviewed in investigating Plaintiff's grievance. Moreover, Defendant's August 20, 2018 response to Plaintiff's July 28, 2018 grievance states that the hand specialist said on May 21, 2018 that Plaintiff should be sent for follow up with a CT scan in one week, but a consultation request for a CT scan was not even submitted until July 2, 2018, and, as of the date of the grievance response— three months later—had still not been approved. Defendant provides no explanation for why the specialist's recommendation for a CT scan was not followed or even how that consultation request was "being processed within required time frames," as she states in her grievance response.

In *Peralta*, the Ninth Circuit Court of Appeals held that "a prison administrator can be liable for deliberate indifference to a prisoner's medical needs if he 'knowingly fail[s] to respond to an inmate's requests for help.'" *Id.* at 1085–86 (quoting *Jett*, 439 F.3d at 1098). Unlike the prison administrator in *Peralta* who was not found liable, Defendant's response to the grievance implies that she conducted the investigation and drafted the response, particularly where she does not present evidence of anyone else being involved

in responding to the grievance. *See id.* at 1086 (administrator defendant not liable where he simply signed off on an appeal response and did not independently review the plaintiff's chart or investigate the plaintiff's complaint). Although Defendant was acting as an administrator, by the time she replied to Plaintiff's grievance, both a prison doctor and an outside specialist whom Plaintiff saw in May 2018 recommended that Plaintiff have surgery right away, and the specialist wanted Plaintiff to have a CT scan before the end of May. Nevertheless, no one even submitted a consultation request for a CT scan until July 2, 2018.

Therefore, drawing all inferences in Plaintiff's favor, Defendant was aware that treating doctors' recommendations were not being followed and Plaintiff was reporting constant pain and difficulty with his activities of daily living by the time she addressed his grievance. Failure to follow treating providers and specialists' recommended treatment, supports a finding of deliberate indifference. *See Colwell v. Bannister*, 763 F.3d 1060, 1069 (9th Cir. 2014) (denying summary judgment where prison officials "ignored the recommendations of treating specialists and instead relied on the opinions of non-specialist and non-treating medical officials who made decisions based on an administrative policy"); *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012) (where the treating physician and specialist recommended surgery, a reasonable jury could conclude that it was medically unacceptable for the non-treating, non-specialist physicians to deny recommendations for surgery), *overruled in part on other grounds by Peralta*, 744 F.3d at 1083.

Although it is not known what specific roles Defendant has held in her 32 years as a "health care professional," she should have been aware there was a risk of harm where the treating providers' recommended treatment for a broken hand was not being provided and the patient was still suffering. A reasonable jury could find that, as FHA, Defendant could have done more than just regurgitate the medical record chronology in this instance. Accordingly, summary judgment will be denied to Defendant.

. . . .

. . . .

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendant Carrie Demery's Motion for Summary Judgment (Doc. 78).

(2) Defendant's Motion for Summary Judgment (Doc. 78) is **denied**.

(3) This matter is referred to Magistrate Judge Michelle H. Burns for a settlement conference.

(4) Defense counsel shall arrange for the relevant parties to jointly call Magistrate Judge Burns' chambers at (602) 322-7610 within 14 days to schedule a date for the settlement conference.

Dated this 29th day of October, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge